FIRST ALEX BANCSHARES, INC., and
The First National Bank, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV–92–981–A.

United States District Court,
W.D. Oklahoma.

Sept. 7, 1993.

William H. Whitehill, Jr., Robert B. Milsten, Andrews Davis Legg Bixler, Milsten & Price, Oklahoma City, OK, for plaintiffs.

Dennis M. Duffy, Martin M. Shoemaker, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### OPINION

ALLEY, District Judge.

Before the Court are Cross Motions for Summary Judgment filed by plaintiffs and defendant. The parties have filed a Joint Stipulation of Facts, set forth below. Because the parties herein have determined that no issues of material fact are in dispute, imposition of summary judgment on the legal issue presented is appropriate. *See* Fed. R.Civ.P. 56. At issue is whether the portions of net operating losses incurred by plaintiffs in the 1987 and 1988 tax years, which are attributable to deductions for bad debts, can be carried back ten years or three years. Upon review of the facts presented and the relevant law, the Court finds as follows.

### STATEMENT OF FACTS

Plaintiffs First Alex Bancshares, Inc. ("First Alex") and First National Bank ("First National") used "the reserve method" of accounting in deducting its bad debts, pursuant to 26 U.S.C. § 585(a) of the Internal Revenue Code (Title 26, U.S.Code, hereinafter "the Code"), and not "the specific charge-off method" described in § 166(a).

The Code permits a ten year carryback, pursuant to § 172(b)(1)(D),[1] if the taxpayer is a bank that has suffered a net operating loss in a tax year, that begins after December 31, 1986 and before January 1, 1994, and if a portion of the net operating losses were attributable to the deduction allowed under § 166(a).

Plaintiffs request refunds of paid income tax against the United States for the tax years 1974, 1976, 1979, 1980, 1981 and 1982 for the principle sum of $41,678.08 and interest thereon based on portions of their net operating losses suffered in the 1987 and 1988 tax years that are attributable to deductions for bad debts.

The following facts are undisputed by the parties. *See* Plaintiffs' Exhibit A, Joint Stipulation of Facts, entered January 22, 1993.

1. Plaintiff First Alex is a national bank holding company, approved as such by order of the Federal Reserve Bank of Kansas City, effective March 31, 1983.

2. Plaintiff First National is a national banking association that does business in Alex, Oklahoma. First National was incorporated in 1912 after approval by the United States Treasury Department, Office of the Comptroller of the Currency.

3. First National does, and during the 1987 and 1988 tax years did, business under the laws of the United States, a substantial part of which consists of receiving deposits and making loans and discounts and is subject by law to supervision and examination by the Federal Reserve Board. First National is, accordingly, a bank as defined in § 581 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*

4. First National is not, and during the 1987 and 1988 tax years was not, an organization to which § 593 of the Code applied because it was not a mutual savings bank, cooperative bank, domestic building or loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law as those terms are used in the Code.

5. First National is not, and during the 1987 and 1988 tax years was not, a "large bank" as that phrase is defined in § 585(c)(2) of the Code because the average adjusted bases of all assets of First National and First Alex do not exceed $500,000.00.

6. Since 1983, First National has been and is a wholly owned subsidiary of First Alex. First National and First Alex are the only members of a "parent-subsidiary controlled group" as that phrase is used in § 585(c)(2)(B) of the Code and as defined in § 585(c)(5)(A).

7. First Alex timely filed a consolidated U.S. Corporation Income Tax Return for the 1987 tax year in the name of "First Alex Bancshares & subsidiary" and listed its EIN as 73–1155285 ("the 1987 Return"). First National and First Alex are the only entities that are consolidated in the 1987 Return.

8. First Alex timely filed a consolidated U.S. Corporation Income Tax Return for the 1988 tax year in the name of "First Alex Bancshares & subsidiary" and listed its EIN as 73–1155285 ("the 1988 Return"). First National and First Alex are the only entities that are consolidated in the 1988 Return.

9. The 1987 Return and the 1988 Return are for the 1987 and 1988 tax years beginning January 1, 1987 and January 1, 1988 respectively.

10. In 1974, 1976, 1979, 1980, 1981 and 1982 First National timely filed income tax returns in its own name and listed its EIN as 73–0123290.

11. On their consolidated income tax returns for the 1987 and 1988 tax years, First National and First Alex used the reserve method of accounting pursuant to Section 585(a) of the Code to determine the amounts of their deductions for bad debts.

12. First National and First Alex suffered net operating losses as defined in § 172 of the Code in each of the tax years 1987 and 1988 because their deductions exceeded gross income. Such losses are not subject to any of the modifications of § 172(d). The majori-

---

1. During the 1987 and 1988 tax years Section 172(b)(1)(D) was codified as Section 172(b)(1)(L).

ty of these losses were attributable to the deduction for bad debts.

13. First National and First Alex carried the portion of their net operating losses suffered in the 1987 and 1988 tax years that were attributable to the deduction for bad debts back ten years, by the filing of amended corporate income tax returns. The carrybacks resulted in refunds for the tax years 1974, 1976, 1979, 1980, 1981 and 1982.

14. The net operating losses suffered by First National and First Alex in the 1987 and 1988 tax years were attributable to First National.

15. First National and First Alex are "includible corporations" as that term is defined in § 1504(b) of the Code.

16. After audit, the Internal Revenue Service (the "IRS") determined that First National and First Alex were not entitled to carry that portion of the 1987 and 1988 net operating losses attributable to the deductions for bad debts back ten years.

17. The IRS made an assessment against First National and First Alex for income taxes for the tax years 1974, 1976, 1979, 1980, 1981 and 1982 and accrued interest thereon (the "Assessments").

18. The Assessments were made as follows:

| Date of Assessment | | Amount and Tax Year |
|---|---|---|
| (a) | August 26, 1991 | $ 483.00 (1974 tax year); |
| (b) | August 5, 1991 | 237.00 (1976 tax year); |
| (c) | October 7, 1991 | 731.00 (1979 tax year); |
| (d) | August 26, 1991 | 9,384.71 (1980 tax year); |
| (e) | August 5, 1991 | 36,803.00 (1981 tax year); and |
| (f) | August 5, 1982 | 6,993.43 (1982 tax year). |

19. The IRS made the Assessments based on its determination that the portion of the net operating losses attributable to the deductions for bad debts suffered in the 1987 and 1988 tax years could only be carried back three years as provided by the general rule of § 172(b)(1)(A) of the Code, instead of the ten years provided in § 172(b)(1)(D).

20. The Bank was credited for or made payments for the tax years and in the amounts indicated with respect to the Assessments:

| Tax Year | Amount |
|---|---|
| 1974 | $ 483.00 |
| 1976 | $ 237.00 |
| 1979 | $ 731.00 |
| 1980 | $ 9,384.71 |
| 1981 | $36,803.00 |
| 1982 | $ 6,933.56 |

21. First National and First Alex timely filed claims for refund or abatement for each of the tax periods and for the amounts set forth in ¶ 20 with the District Director of the IRS in Oklahoma City, Oklahoma.

22. After certain credits, the balance of the Assessment for tax and interest totalled $41,678.08, which First Alex remitted with the claims for refund.

23. Each claim for refund was denied by the IRS.

24. No part of the overpayments have been repaid or refunded to First National or First Alex.

25. In the event First National and First Alex are limited to a three year carryback of the portions of their net operating losses suffered in the 1987 and 1988 tax years, the Assessments and credits made by the IRS are correct, then First Alex and First National are not entitled to any refund and no tax is due.

26. In the event First National and First Alex are allowed a ten year carryback of the portions of their net operating losses, attributable to the deductions for bad debts, the Assessments and the credits thereto are erroneous; First National and First Alex are entitled to refunds of income taxes and interest accrued thereon to the date of payment in the aggregate amount of $41,678.08, together with interest after the date of payment as provided by law, abatement of the balance of the Assessments, if any, and such further relief the Court may deem proper.

## APPLICABLE STATUTES

Internal Revenue Code of 1986, as amended (26 U.S.C.):

SECTION 166. BAD DEBTS.

(a) *General Rule.—*

(1) Wholly Worthless Debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

. . . . .

## SECTION 172. NET OPERATING LOSS DEDUCTION.

(a) *Deduction Allowed.*—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.

(b) *Net Operating Loss Carrybacks and Carryovers.*—

(1) Year To Which Loss May Be Carried.—

(A) General Rule.—Except as otherwise provided in this paragraph, a net operating loss for any taxable year—

(i) shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and

(ii) shall be a net operating loss carryover to each of the 15 taxable years following the taxable year of the loss.

. . . . .

(D) Bad Debt Losses of Commercial Banks.—In the case of any bank (as defined in section 585(a)(2)), the portion of the net operating loss for any taxable year beginning after December 31, 1986, and before January 1, 1994, which is attributable to the deduction allowed under section 166(a) shall be a net operating loss carryback to each of the 10 taxable years preceding that taxable year of the loss and a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

. . . . .

## SECTION 585. RESERVES FOR LOSSES ON LOANS OF BANKS.

(a) *Reserve for Bad Debts.*—

(1) In General.—Except as provided in subsection (c), a bank shall be allowed a deduction for a reasonable addition to a reserve for bad debts. Such deduction shall be in lieu of any deduction under section 166(a).

## DISCUSSION

■ The general rule regarding the limitations on deductibility of net operating losses is that commercial banks are entitled to a three-year carryback/fifteen-year carryforward of those losses attributable to bad debts. *See* § 172(b)(1)(A). However, section 172(b)(1)(D) provides an exception to the general rule, so that a portion of a bank's net operating losses attributable to a current year deduction for bad debts, pursuant to § 166(a), may be carried back ten years and forward five years.

■ Prior to the Tax Reform Act of 1986, all commercial banks could carry back their net operating losses for ten years pursuant to § 172(b)(1)(F); however, the Act was amended, repealing § 166(c) and creating the § 172(b)(1)(D) exception. The result, in part, was that banks have an option to use either the "specific charge-off method" or the "reserve method" of accounting in computing their deductions for bad debts. Under the reserve method, an account is established based on the bank's estimate of the uncollectible portion of receivables on hand at a particular date. Each year the bank is allowed a reasonable addition to this reserve account that may be deducted as an expense. On the other hand, the specific charge-off method is used for an isolated bad debt that may be deducted only in the year that the debt actually becomes worthless.

The operative language of § 585(a)(1) is that "[s]uch a deduction [the annual addition to reserve for bad debts] shall be **in lieu of** any deduction under section 166(a)." *See* § 585(a)(1) (emphasis added). Plaintiffs herein elected to use the reserve method of accounting, pursuant to § 585(a)(1), when calculating their deduction for bad debts in the 1987 and 1988 tax years. In spite of this election, they now claim that they are entitled to carry the portion of their net operating losses attributable to their deduction for bad debt back ten years, interpreting the language "in lieu of" in § 585(a)(1) as meaning "interchangeable with." The government proposes as an interpretation that "in lieu of"

means "instead of" in a mutually exclusive sense.

■ Thus, this entire controversy hinges on the appropriate interpretation of the phrase "in lieu of" in § 585(a)(1). In general, "the plain meaning of legislation should be conclusive, except in the 'rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.' " *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). *See also O'Connor v. U.S. Department of Energy*, 942 F.2d 771, 773 (10th Cir.1992) (court should venture into thicket of legislative history only when the statutory purpose is obscured in ambiguity). If plaintiffs' interpretation of "in lieu of" is accepted, it would eliminate the importance of the statutory distinction between the reserve method and the specific charge-off method. The Court is persuaded by the defendant's position that the plain meaning of "in lieu of" is mutually exclusionary, so that the § 585 deduction is different from the § 166(a) deduction. Consequently, if a bank chooses to use the reserve method for writing off bad debts, it does so pursuant to § 585(a), not § 166(a).[2]

Apart from comporting with a "plain meaning" statutory construction, the government's position comports with ordinary economic reality. Under the charge-off method, bad debt loss deductions may vary greatly from year to year and a long carryback is appropriate to ameliorate effects of a particularly bad year. Under the reserve method, ordinarily the annual additions to reserve would be fairly even figures. In any given year, the addition could be more than or less than current bad debt losses. It is anticipated that these would roughly balance out over time if the additions are indeed reasonable. If this is so, there is less reason to permit a long carryback of loan losses that would look like a "spike" on a chart.

Following the repeal of § 166(c), all authority for the reserve method of accounting has been found in § 585 exclusively. The plaintiffs should have been aware of this and nevertheless used the reserve method in determining the amounts of their bad debt deduction for tax years 1987 and 1988. Plaintiffs lost their right to claim the § 172(b)(1)(D) ten year carryback deduction because they did not use the specific charge-off method in calculating their bad debts. As such, plaintiffs are barred from carrying back their 1987 and 1988 net operating losses for ten years. The United States' Motion for Summary Judgment is, therefore, GRANTED. The Assessments and the credits made by the IRS are correct, thus, First Alex and First National are not entitled to a refund and no additional tax is due.

## CONCLUSION

The Court finds that the plaintiffs, by using the reserve method of accounting and not a specific charge-off method, are barred, as a matter of law, from carrying back their 1987

2. While the plain meaning of "in lieu of" in § 585(a)(1) is unambiguous and, therefore, needs no special illumination, it should be noted that there is additional support for this interpretation from a persuasive, although not authoritative, source. The staff of the Joint Committee on Taxation wrote the following in its explanation of the Act.

The Congress believed that net operating losses incurred by financial institutions, such as commercial banks and thrift institutions, should be treated in the same manner as net operating losses incurred by other taxpayers. However, the Congress was aware that the immediate application of such a change to commercial banks in concert with the repeal of the reserve method of computing a deduction for bad debts could have an unnecessarily adverse impact upon the deferred tax accounts

that such taxpayers keep for financial and regulatory accounting purposes. Accordingly, the ten year carryback period of prior law is retained for such taxpayers for taxable years beginning before 1994 for the portion of a net operating loss attributable to deductions for bad debts ...

A special 10–year carryback provision is provided for commercial banks that are required to compute their deduction for bad debts using the specific charge-off method as a result of the Act ... The special 10–year carryback provision does not apply to ... a commercial bank that continues to compute its deduction for bad debts using the reserve method....

Staff of Joint Committee on Taxation, 100th Cong., 1st Sess., *General Explanation of the Tax Reform Act of 1986*, at 567–68 (1987).

and 1988 net operating losses for ten years. The general rule contained in § 172(b)(1)(A), providing a three year carryback period, applies to plaintiffs' net operating losses. In light of our decision GRANTING the United States' motion for summary judgment, plaintiffs' motion for summary judgment is now MOOT, as are the arguments relating thereto.

It is so ordered.