**In re the MARRIAGE OF Kendall VON GLAN and Karen Von Glan.**

**Upon the Petition of Kendall Von Glan, Appellant,**

**And Concerning Karen Von Glan, Appellee.**

No. 93–384.

Court of Appeals of Iowa.

Oct. 25, 1994.

Dan T. McGrevey, Fort Dodge, for appellant.

Thomas J. Anderson of McMartin & Anderson, Harlan, for appellee.

Considered by HAYDEN, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

Kendall and Karen Von Glan were married in 1974 and divorced in 1990. Under the terms of the dissolution decree, the parties were awarded joint legal custody of their three children, with Karen having primary physical care.

Karen obtained a college degree during the marriage and subsequently became employed by the Iowa Department of Human Services as a social worker. Kendall finished his college degree during the marriage and obtained a master's degree in animal nutrition. He is employed by a family farm corporation. Kendall, his two brothers, and a sister-in-law are stockholders in the corpora-

tion. Kendall owns thirty-nine percent of the stock.

The district court did not award any spousal support in the dissolution decree. The court determined the parties had net marital assets worth $303,170. This was based on a valuation of $288,250 for Kendall's share of the family farm corporation. The court awarded Kendall most of the parties' assets and ordered him to pay Karen $139,785 as a property settlement. This amount was payable in installments, $39,785 was due in 1990 and $10,000 was due in each of the next ten years.

Kendall filed an appeal and Karen filed a cross-appeal. Kendall claimed the property distribution provision of the dissolution decree was unduly burdensome to him. He told Karen he planned to file for bankruptcy. Karen became concerned because her property settlement could be discharged in bankruptcy. In her cross-appeal Karen sought to be awarded alimony because an alimony obligation is not dischargeable in bankruptcy.

While the appeals were pending, the parties entered into a settlement stipulation. The supreme court remanded the case to the district court for consideration of the stipulation. On October 26, 1990, the district court entered an order approving the parties' stipulation and incorporated it into a supplemental decree. The supplemental decree eliminated the provision that neither party was awarded alimony and added in its place an alimony provision requiring an annual payment of $6000 per year for ten years which would terminate upon Karen's death.

> Petitioner should pay Respondent alimony (deductible by Petitioner, includable in gross income of Respondent and non-dischargeable in bankruptcy) in the amount of $6,000 per year, payable annually without interest, beginning October 15, 1991, for a period of ten years, which payments shall terminate upon the death of Respondent.

The supplemental decree also eliminated the provision that each party would be responsible for his or her own attorney fees and provided instead that Kendall would pay $11,000 towards Karen's attorney fees. Additionally, the supplemental decree eliminated the property distribution provision and inserted:

> To represent the Respondent's distributive interest in the marital properties the Petitioner is directed to pay the Respondent within 10 days hereof the sum of $20,000.00.

After the district court approved their stipulation the parties dismissed their appeals.

Karen married Thomas Anderson on August 14, 1992. Kendall refused to pay Karen the $6000 payment due on October 15, 1992. On October 26, 1992, Karen filed an application to compel payment of alimony. She claimed the "alimony" was really a form of property distribution and not dischargeable by remarriage. Kendall filed a counterclaim in which he sought a modification of the decree to terminate his alimony obligation due to Karen's remarriage.

The district court determined it had no authority to change the $6000 payment which was due on October 15, 1992. In considering the future payments, the court determined the supplemental decree had been intended to restructure the property distribution to allow Kendall to deduct the payments for purposes of federal income taxes. The court concluded the payments were a part of the property distribution and were not subject to termination because of Karen's remarriage. Kendall appealed. We reverse and modify in accordance with this opinion.

Kendall contends the supplemental decree was designed to award Karen alimony. He points out that in her cross-appeal to the original dissolution decree, Karen sought alimony. He states that in the parties' negotiations, Karen's ultimate desire was to receive alimony.

■ The general rule in Iowa is that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient to show that extraordinary circumstances exist which require the continuation of the alimony payments. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). Kendall claims Karen has failed to show such extraordinary circumstances and his obligation to pay alimony should be terminated.

We must first determine whether the alimony provided for in the supplemental decree means alimony or a cash property settlement. In determining whether the financial provisions of a dissolution decree constitute a property settlement or alimony, the trial court's employment of the word "alimony" is not conclusive. *Knipfer v. Knipfer*, 259 Iowa 347, 351, 144 N.W.2d 140, 142 (1966). It is not what the arrangement is called, but what it is that fixes its legal status. *Id.* The court must take into consideration all the relevant factors, including the provisions of the agreement between the parties, the circumstances under which the agreement was made, the nature and value of the property owned by and to be divided between the parties, the original divorce proceedings, and the terms of the dissolution decree sought to be modified. *Id.* at 352, 144 N.W.2d at 143.

We note at the inception that it is the decree and not the stipulation which creates whatever rights the parties have. *Id.* at 350, 144 N.W.2d at 142. Although a stipulation and settlement in a dissolution proceeding is a contract between the parties, it becomes final only when accepted and approved by the court. *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987) (citing *Prochelo v. Prochelo*, 346 N.W.2d 527, 529 (Iowa 1984)).

When the stipulation merged into the supplemental decree, it is then to be interpreted and enforced as a final judgment of the court, not as a separate contract between the parties. *Prochelo*, 346 N.W.2d at 530 (citing *Bowman v. Bennett*, 250 N.W.2d 47, 50 (Iowa 1977)). Thus, when we interpret the supplemental decree, the determinative factor is the intent of the trial court as gathered from the supplemental decree and other proper evidence. *In re Marriage of Knott*, 331 N.W.2d 135, 137 (Iowa 1983) (citing *Bowman*, 250 N.W.2d at 50).

There is an abundance of evidence that Karen specifically sought to be awarded alimony because such payments are not dischargeable in bankruptcy. Kendall agreed that the payments should be considered alimony because the payments were then tax deductible. Thus, the parties both received a benefit by creating an alimony award for Karen.

It is clear from the supplemental decree that the court intended to amend the dissolution decree by inserting a new provision which specifically provides that Karen is to receive alimony. In this respect it cannot go unnoticed that in the dissolution decree it was expressly provided that neither party was entitled to alimony.

It is equally clear the court intended the payments to be classified as alimony and not a part of the property division. The terminology employed by the court made it more than clear the annual payments were once and for all to be determined as alimony when it provided the payments were "alimony (deductible by the Petitioner, includable in gross income of respondent and non-dischargeable in bankruptcy) in the amount of $6000 per year, payable annually without interest, beginning October 15, 1991, for a period of ten years, which payments shall terminate upon the death of Respondent." Were we to follow the arguments and reasoning of the appellees, we would place the courts of this state in the compromising position of saying, on the one hand, the $6000 annual payments are to be considered as alimony as long the respondent does not remarry and in the further event the payor takes bankruptcy, but if the respondent remarries and as long as the payor does not take bankruptcy, then such payments are not alimony, but are really part of the property settlement. This, of course, we decline to do.

But there are additional reasons to support the conclusion the court intended the payments to be alimony. The supplemental decree explicitly provided the payments were terminable upon Karen's death and were not to draw interest. We believe the fact that payments are terminable upon a spouse's death buttresses a conclusion the payments are alimony. Surely if there is any intent at all that the payments were part of the division of property, they would have continued even after the death of Karen. *See In re Marriage of Harvey*, 393 N.W.2d 312, 314 (Iowa 1986).

In addition, section 5C of the stipulation deleted the first sentence in paragraph 9 of the dissolution decree (directing the parties to pay their own attorney fees) and obligated Kendall to make an immediate $11,000 payment to Karen for her legal expenses, including her attorney fees. Finally, section 5D of the stipulation deleted in its entirety paragraph 13 of the dissolution decree (ordering Kendall to make payments based upon the disputed value of the marital assets to Karen) and obligated Kendall to make an immediate $20,000 payment to Karen in satisfaction of the remainder of her share of the marital property ("To represent the Respondent's distributive interest in the marital properties the Petitioner is directed to pay the Respondent within 10 days hereof the sum of $20,000.00.").

We conclude the parties' stipulation means what it says and the payments designated as alimony are indeed alimony. As alimony, the payments may be modified if the other requirements of law are met.

▮ As we stated in *In re Marriage of Phares*, 500 N.W.2d 76 (Iowa App.1993):

> The third question was whether the alimony terminated on remarriage. The alimony award was modifiable. *See In re Marriage of Skiles*, 419 N.W.2d 586, 588 (Iowa App.1987).
>
> The dissolution decree contained no language alimony did not terminate on remarriage. Parties can contract and dissolution courts can provide alimony is not modifiable, does not terminate on remarriage, or is payable in a lesser sum on remarriage. [*In re Marriage of*] *Aronow*, 480 N.W.2d [87] at 89. There was no such language in the decree.
>
> When a provision for alimony is silent on the issue of payment of alimony to a former spouse after his or her remarriage, the burden is on the former spouse contending the alimony should continue to show extraordinary circumstances warrant continuing the alimony. *See In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *In re Marriage of Cooper*, 451 N.W.2d 507, 509 (Iowa App.1989). Betsy has not made a sufficient showing of extraordinary circumstances warranting continuation of alimony. She is now employed and her current husband has a substantial income.

Like in *Phares*, Karen has not made a sufficient showing of extraordinary circumstances warranting continuation of alimony. In addition, at trial Karen did not claim alimony should continue past her remarriage due to extraordinary circumstances. The trial court stated:

> That was my understanding that no claim is being made by the respondent for alimony based upon her present economic conditions but that the only claim to alimony is based upon the claim that the alimony provision in the decree is really a property settlement.

Based on the fact there is no claim of extraordinary circumstances, we conclude Kendall should not be required to make future alimony payments. We find, however, that Kendall is obligated to pay five-sixths of the payment of $6000 which was due on October 15, 1992. This fraction is arrived at by computing the months from October 15, 1991 to the date of Karen's marriage on August 14, 1992.

We reverse the decision of the district court and modify the parties' dissolution decree, as supplemented, to terminate Kendall's future alimony obligation all in accordance with this opinion. Costs of this appeal are assessed to appellee.

**REVERSED AND MODIFIED.**

HAYDEN, P.J., concurs.

CADY, J., dissents.

CADY, Judge (dissenting).

I respectfully dissent. I believe extraordinary circumstances exist which require the continuation of the alimony payments.

The general rule that remarriage of a spouse establishes a prima facie case for termination of an alimony obligation is based on public policy that a spouse should not have support or its equivalent during the same period from both a former spouse and a current spouse. *See In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). In

this case, Karen was not awarded alimony for financial support, but solely to balance the inequities of the property division. *See In re Marriage of Thomas,* 319 N.W.2d 209, 212 (Iowa 1982) (holding former wife entitled to alimony where former husband was awarded farm acquired by gift and inheritance and there was a need to adjust for former wife's contribution to farm). At the time the petition for modification was filed, the essential balance had not been accomplished. Alimony should continue to carry out the goal of an equitable distribution of the property. The need to complete this distribution, in my judgment, constitutes extraordinary circumstances.