# IN THE COURT OF APPEALS OF IOWA

No. 15-2145
Filed December 21, 2016

**IN RE THE MARRIAGE OF DIANE K. BJORNSTAD
AND EDWARD W. BJORNSTAD**

**Upon the Petition of
DIANE K. BJORNSTAD n/k/a HEGGESTAD,**
      Petitioner-Appellee,

**And Concerning
EDWARD W. BJORNSTAD,**
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dickinson County, John D. Ackerman, Judge.

The husband appeals from the district court's interpretation of the parties' dissolution decree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellant.

Timothy J. Kramer of Kramer Law Firm, P.L.C., Sioux Center, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Edward Bjornstad appeals from the district court's interpretation of the decree dissolving his marriage to Diane Bjornstad n/k/a Heggestad. Bjornstad maintains the district court wrongly concluded that his ongoing obligation to pay the mortgages on the family residence, in which Heggestad was residing, was part of the property settlement rather than spousal support. In the alternative, he maintains even if the payments are part of the property settlement, the district court's conclusion he is required to satisfy the mortgage obligations in full from his own proceeds when Heggestad sells the home is inequitable.

I.

In April 2011, Heggestad filed a petition for dissolution. At the time of the petition, the parties had been married almost thirty years and had no minor children. In December, the parties filed a stipulation and property settlement with the court. Under paragraph 6, entitled "alimony," the parties stipulated, "Edward shall pay to Diane the sum of $1,000.00 per month until Diane dies or remarries or turns age 66, whichever occurs first, at which time alimony shall cease." The alimony was to begin on December 1, 2011. Under paragraph 7, entitled "division of property and debts," the parties stipulated that Heggestad would be awarded the marital residence. Paragraph 7 further provided:

> In lieu of additional alimony, Edward shall be responsible for the first and second mortgage payment for the family residence, including real estate taxes and insurance. Edward shall hold harmless and indemnify Diane for any expenses related to the first and second mortgage, taxes and insurance. Edward shall be entitled to the interest deduction for mortgage payments made. This shall be considered support and shall be non-dischargeable in bankruptcy.

The district court adopted the stipulation into the decree: "It is further ordered that the Stipulation of Settlement filed herein and executed by the parties and their attorneys is incorporated as if fully set forth herein."

In 2014, Heggestad filed a petition for declaratory judgment. She asked the court to declare and confirm Bjornstad's "obligation to make the first and second mortgage payments does not terminate at the time his alimony obligation expires" and "to pay the first and second mortgage in full from his own resources and not from the real estate proceeds should [she] sell the Okoboji real estate prior to loan maturity." She also requested interpretation of other provisions of the decree not involved in this appeal. The court treated Heggestad's petition as a motion requesting the court to construe the terms of the decree. The court concluded:

> [T]he payments [for the mortgages, taxes, and insurance] are part of the property settlement and are not alimony payments.
>
> Therefore, in the event that Diane chooses to sell the marital home, [Bjornstad] would be responsible for paying off the first and second mortgages if the lender, at its option, exercises its right to declare the unpaid balance due and payable. [Bjornstad] could obtain alternative financing arrangements with a new lender or make arrangements with the current lender to continue the payments as under the mortgage and notes. In either event, none of the sale proceeds would have to be used to satisfy the first and second mortgages.

## II.

We review the district court's interpretation of the marital decree de novo. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## A.

"A stipulation and settlement in a dissolution proceeding is a contract between the parties." *In re Marriage of Jones,* 653 N.W.2d 589, 593 (Iowa 2002). However, the parties' stipulation is not binding on the court. *See id.* "[T]he court has the responsibility

to determine 'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues.'" *Id.* (citations omitted). Consequently, once the court enters a decree adopting the stipulation, "[t]he decree, not the stipulation, determines what rights the parties have. Therefore, in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties." *Id.* at 594 (citations omitted).

We interpret and construe the terms of a dissolution decree "like any other written instrument." *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987).

> "The decree should be construed in accordance with its evident intention. Indeed the determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed." Of course, in determining this intent, we take the decree by its four corners and try to ascertain from it the intent as disclosed by the various provisions of the decree.

*In re Roberts' Estate*, 131 N.W.2d 458, 461 (Iowa 1964) (citations omitted).

B.

We first address whether the decretal provision requiring Bjornstad to make the payments on the first and second mortgages against the family residence should be considered alimony or part of the property division. We conclude the evident intention of the decree, as determined from the text thereof, was to treat the mortgage obligations as part of the property settlement and not alimony.

We first look to the structure of the decree. *See Passamano v. Passamano*, 634 A.2d 891, 895 (Conn. 1993) (stating when characterizing a dissolution order "an analysis of the structure of the dissolution decree is highly instructive"); *Howard v. Moore*, 580 N.E.2d 999, 1003–04 (Ind. Ct. App. 1991) (stating the "structure of the

terms of the final decree" is used in determining "whether an obligation stemming from a divorce decree is in the nature of alimony, support or maintenance, or whether it is in fact a property settlement"); *In re Marriage of Kimm*, No. 14-2149, 2015 WL 5579914, at *3 (Iowa Ct. App. Sept. 23, 2015) ("When interpreting the language of the decree, we look not to the intent of the parties when entering the stipulation; we look to the document as it expresses the intent of the court."). Paragraph 6 of the decree is entitled "alimony." The mortgage payment provision is contained in paragraph 7, entitled "division of debt and property." The subject matter of paragraph 6 is alimony, and the subject matter of paragraph 7 is the property division. The intentional division of Bjornstad's payment obligations into these separate-subject-matter paragraphs demonstrates the payment obligations were to be different in kind. *See Passamano*, 634 A.2d at 92 (finding the organization of the decree to be important in interpreting the document and concluding obligation to pay mortgage on the family home was part of the property settlement because the obligation was set forth in a paragraph related to property settlement). It is of no consequence the payments were to be made on a periodic basis. *See Farrand v. Farrand*, 67 N.W.2d 20, 23 (Iowa 1954) (holding periodic payments were property settlement and not alimony).

Second, the specific terms used demonstrate the mortgage-payment obligation was not intended to be alimony. In paragraph 6, the decretal court specifically used the term "alimony" to identify Bjornstad's payment obligation. In contrast, the district court denominated the mortgage obligation "support." We must assume the decretal court intended different meanings when it used different terms to identify the different payment obligations. *Cf. Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002)

("We assume the legislature intends different meanings when it uses different terms in different portions of a statute.").

Third, and related, interpreting the mortgage payments to be additional alimony fails to give force and effect to every word of the decree. *See Marriage of Brown*, 776 N.W.2d at 650 ("In construing a dissolution decree, we give force and effect to every word, if possible, in order to give the decree a consistent, effective and reasonable meaning in its entirety.") (citing *Lawson*, 409 N.W.2d at 182–83). Here, the decree provides Bjornstad shall be responsible for the mortgages "[i]n lieu of additional alimony." "'In lieu of' means 'in the place of' or 'instead of.'" *Conroy v. Keith Cty. Bd. of Equalization*, 846 N.W.2d 634, 641 (Neb. 2014) (quoting Webster's Third New International Dictionary of the English Language, Unabridged 1306 (1993)). The plain meaning of "in lieu of" is mutually exclusionary. *First Alex Bancshares, Inc. v. United States*, 830 F. Supp. 581, 585 (W.D. Okla. 1993). To hold the mortgage payment obligation is additional alimony "instead of" alimony reads the phrase "in lieu of" out of the decree.

Fourth, the mortgage payment obligation does not possess the hallmarks of an alimony award. The district court specifically limited the tax deductibility of the mortgage payment obligation to only the interest paid versus the entire amount paid. If the obligation were alimony, the entirety of the payment would be tax deductible. *See In re Marriage of Murray*, 213 N.W.2d 657, 660 (Iowa 1973). Further, the decretal court did not provide an explicit discharge date for the mortgage payment obligation but did provide explicit discharge dates for the alimony award. *See In re Marriage of Von Glan*,

525 N.W.2d 427, 430 (Iowa Ct. App. 1994) ("We believe the fact that payments are terminable upon a spouse's death buttresses a conclusion the payments are alimony.").

The decree "means what it says," and the payment obligations set forth in the paragraph relating to the property division must be interpreted and construed to be part of the property division. *Id.; see, e.g.*, *Tilley v. Jessee*, 789 F.2d 1074, 1077–78 (4th Cir. 1986) *("*In this instance, the agreement did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document. Indeed . . . if this agreement does not reveal an intent to separate alimony from a property settlement, it is virtually impossible to envision a written agreement that could do so."); *In re Lepley*, 2007 WL 2669128, at *5 (Bankr. W.D. Mo. Sept. 6, 2007) (holding award was property and not support where support and property division were in separate parts of decree); *In re Rice*, 94 B.R. 617, 618 (Bankr. W.D. Mo. 1988) (holding payment obligation was property settlement "because of the placement of that particular clause in the decree, as well as considering the amount of marital property each party received," and because "the state court awarded specific spousal maintenance"). We affirm the district court on this issue.

## C.

We next address whether Heggestad or Bjornstad was required to satisfy the loan obligations upon Heggestad's sale of the family residence. The district court held Heggestad was not required to satisfy the loan obligations from the sale proceeds but instead Bjornstad was required to satisfy the loan obligations with his own funds. This was error.

The plain language of the decree supports the conclusion Bjornstad was responsible only for the monthly mortgage payment and not the entirety of the loan balances upon sale. Paragraph 7 provides Bjornstad shall be responsible for the first and second "mortgage payment." Generally, the term "mortgage payment" refers to the periodic payments called for by the terms of the notes and mortgages securing the notes. *See, e.g.*, Conn. Gen. Stat. § 8-302(k) (2015) ("'Mortgage payments' means periodic payments called for by a mortgage, and may include, but is not limited to, interest, installments of principal, taxes and assessments, mortgage insurance premiums and hazard insurance premiums"); Ind. Code § 5-28-31-17 (2015) ("'[M]ortgage payments' means periodic payments called for by the mortgage that cover interest, installments of principal, taxes and assessments, mortgage insurance premiums, and hazard insurance premiums."); 42 R.I. Gen. Laws § 42-34-6(12) (2015) ("Mortgage payments" means periodic payments by the mortgagor to the mortgagee required by the mortgage."); Vt. Stat. Ann. tit. 10 § 212(13) (2016) ("'Mortgage payments,' as used in subchapter 2, means the periodic payments called for by a mortgage which shall cover lease land rentals, if any, mortgage insurance premiums, interest, installments of principal, taxes and assessments, hazard insurance payments, and any other payments called for in the mortgage."). If the decretal court intended for Bjornstad to make a lump sum payment to satisfy the notes and mortgages upon the sale of the property, it could have inserted such a requirement into the text of the decree. *Cf. Cherry v. Cherry*, 422 So. 2d 784, 785 (Ala. Civ. App. 1982) (noting decree required husband to pay monthly mortgage and satisfy the mortgage in full).

The text of paragraph 7 imposes a further limitation on Bjornstad's payment obligation. Paragraph 7 provides Bjornstad shall be responsible for the mortgage payments for "the family residence." This evidences the district court's intent to award Heggestad the "family residence" to be used for herself and for the parties' children to visit with her. However, upon rental of the home or sale of the home, it no longer serves as the "family residence." From this, it can be inferred the decretal court intended Bjornstad's obligation to make payments ceased upon the sale of the property.

The financial condition of the parties provides further insight into the decretal court's intent. "Property to be divided between the parties is divided in an equitable manner in light of the particular circumstances of the parties." *In re Marriage of Nelson*, No. 15-0492, 2016 WL 3269573, at *2 (Iowa Ct. App. June 15, 2016); *see also In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Here, the parties' respective financial statements show Bjornstad left the marriage with very little in liquid assets. More likely than not, he would not have been able to satisfy the notes and mortgages on the "family residence" without obtaining financing. It seems unlikely the district court would impose upon Bjornstad the obligation to obtain financing on short notice from his former spouse without explicitly stating as much. This is particularly true given that it is uncertain whether Bjornstad would have had sufficient collateral to secure the required financing or whether a lender would have extended an unsecured loan to fund the payoff of the existing loan obligations.

Further, the conclusion Heggestad is entitled to the entirety of the sale proceeds of the "family residence" while Bjornstad is solely responsible for the obligations results in an inequitable property division. Specifically, under the district court's resolution of

the issue, Heggestad would have been awarded approximately $258,000 in marital property and Bjornstad would have been awarded approximately -$80,000 in marital property. In contrast, by construing the decree to require Heggestad to satisfy the loan obligations with the sale proceeds, the parties are awarded an equitable—not equal—amount of marital property. Our courts have long held a writing "will not be construed so as to give one party an unfair, oppressive or inequitable advantage over the other." *Holden v. Constr. Machinery Co.*, 202 N.W.2d 348, 361 (Iowa 1972). We should "not hesitate to indulge in inferences which will avoid unfair or inequitable results." *Id.*

While we are not at liberty to modify the property division to reach a resolution to the dispute, *see In re Marriage of Hazen*, 778 N.W.2d 55, 59–60 (Iowa Ct. App. 2009) ("A property division divides the property at hand and is not modifiable."), we "[n]evertheless . . . retain[] authority to interpret and enforce [the] prior decree." *In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012). Paragraph 7 provides Bjornstad shall be required to make the monthly "mortgage payments" related to the "family residence" so long as the property remains "the family residence." Paragraph 7 contains a necessary corollary that Bjornstad has no responsibility to satisfy the entirety of the loan obligations upon the sale of the "family residence." *See Alta Vista Props., L.L.C. v. Mauer Vision Ctr., P.C.*, 855 N.W.2d 722, 729 (Iowa 2014) (discussing necessary corollary conditions in writings). Instead, the loan obligations must be satisfied by the sale proceeds of the "family residence." We reverse the judgment of the district court on this issue.

III.

For the above-stated reasons, we affirm in part and reverse in part the judgment of the district court. We remand this matter for the entry of judgment consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mullins, J., concurs; Potterfield, P.J., dissents partially.

**Potterfield, Presiding Judge** (concurring in part and dissenting in part).

I respectfully dissent in part. While I agree with the majority that the intent of the decretal court was not to require Bjornstad to pay the full amount of the note when Heggestad sells the house, I disagree with the conclusion of the majority and the district court that the payments should be characterized as property settlement rather than alimony.

In determining whether the mortgage payments were meant to be alimony or part of the property settlement, we are to consider all the relevant factors, "including the provisions of the agreement between the parties, the circumstances under which the agreement was made, the nature and value of the property owned by and to be divided between the parties, the original divorce proceedings, and the terms of the dissolution decree sought to be modified." *In re Marriage of Von Glan*, 525 N.W.2d 427, 430 (Iowa Ct. App. 1994). Listing the obligation to pay the mortgages, taxes, and insurance under the section entitled "division of property and debts," and introducing it with the phrase "in lieu of additional alimony" supports the interpretation that such payments are part of the property settlement.

But unlike the majority, I am not convinced the use of the word "support"—as opposed to "alimony"—suggests property settlement. *See* Iowa Code § 598.21A (2013) ("Orders for spousal support"); *see also In re Marriage of Ales*, 592 N.W.2d 698, 702 n.2 (Iowa Ct. App. 1999) ("Spousal support and alimony are used interchangeably by the courts, however the term "alimony" was formally replaced by our statutory law in 1980 and replaced by 'spousal support.'"). Moreover, "[i]t is not what the arrangement is called, but what it is that fixes its legal status." *Von Glan*, 525 N.W.2d at 430. Here, the

stipulation incorporated into the district court's decree stated that the payments "shall be considered support and shall be non-dischargeable in bankruptcy." "A debt to a spouse, former spouse, or child of the debtor for alimony, maintenance, or support which arose from a dissolution decree is nondischargeable in bankruptcy." *Ziegenhorn v. Iowa Dist. Ct.*, 510 N.W.2d 894, 896 (Iowa Ct. App. 1993) (citing 11 U.S.C. § 523(a)(5)). However, "[a] debt arising from a dissolution decree which merely divides marital property is dischargeable." *Id.* (citing *In re Coil*, 680 F.2d 1170, 1171 (7th Cir. 1982)).

Additionally, Bjornstad's obligation to pay the mortgages, as well as any future insurance and taxes, is not a "fixed or determinable sum," as is characteristic of property awards. *See Knipfer v. Knipfer*, 144 N.W.2d 140, 144 (Iowa 1966). While the amount due on the mortgages and the number of payments to be made were known terms at the time the court entered the decree, it is fair to assume the taxes and insurance could and would change during the life of Bjornstad's obligation to pay them. And the periodic nature of the payments is more in line with the typical idea of alimony. *See, e.g.*, *Danley v. Danley*, 163 N.W.2d 71, 74 (Iowa 1968) ("Alimony in gross, or in a lump sum, is in the nature of a final property settlement, and hence in some jurisdictions is not included in the term 'alimony,' which in its strict or technical sense contemplates money payments at regular intervals.").

I believe Bjornstad's obligation to pay the mortgages, insurance, and taxes each month is properly considered alimony rather than part of the property settlement, and I would interpret the decree as such. I otherwise concur in the majority's opinion.