In re the MARRIAGE OF Joyce Marie MUR-RAY and William Joseph Murray, Jr. upon the Petition of Joyce Marie Murray, Appellant,

and concerning William Joseph Murray, Jr., Appellee.

No. 55799.

Supreme Court of Iowa.

Dec. 19, 1973.

Fuerste & Carew, Dubuque, for appellant.

Swift & Swift, Manchester, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

RAWLINGS, Justice.

Petitioner appeals from marriage dissolution adjudication claiming error in property allocation and denial of alimony. We affirm in part, reverse in part.

January 2, 1952, the parties here directly involved were married. They have five children.

February 22, 1971, the instantly involved petition was filed.

November 24, 1971, the case came on for trial.

November 27, 1971, decree was entered. Petitioner, Joyce Marie Murray (Joyce), was thereby awarded (1) custody of children and $500 each month until the youngest child reached 18 years of age; (2) about $34,000 in property, and (3) no alimony. Joyce was also ordered to assume and pay debts of $9500. Respondent, William Joseph Murray, Jr. (William), was granted property valued at approximately $74,000 and directed to assume and pay debts of $4500.

Petitioner's motions to enlarge findings and modify the decree were overruled.

I. First to be entertained is respondent's motion to dismiss or limit this appeal. In essence he thereby alleges petitioner's notice of appeal does not adequately specify the judgment or decree from which appeal is taken, and it is in any event restricted to petitioner's enlargement of findings and modification of judgment motions.

This court dealt at some length with the instant subject in Hawkeye Security Insurance Co. v. Ford Motor Co., 199 N.W.2d 373, 378 (Iowa 1972), and there aptly stated:

"In considering the sufficiency of the content of the notice we now hold that if the intent of the appellant to appeal from a judgment may be inferred from the text of the notice and if the appellee

has not been misled by the defect the appeal will be entertained. \* \* \*

"There is no assertion of prejudice to any party in the instant action resulting from the claimed lack of exacting compliance with rule 336, R.C.P.; nor is there any showing of confusion in the record before us as to which judgment is being appealed from. Absent any such showing by a party complaining of a lack of rigid compliance with rule 336, R.C.P., and taking into account the extent of the litigation involved in the matter before us, we hold the notice of appeal was sufficient and substantially complied with the rule."

See also Stotler v. Lutheran Social Service of Iowa, 209 N.W.2d 121, 124 (Iowa 1973).

Respondent's motion to dismiss or limit this appeal is overruled.

■ II. Our review is de novo. We accord weight to trial court's findings but are not bound by them. See Iowa R.Civ.P. 344(f)(7); Ried v. Ried, 212 N.W.2d 391 (Iowa, opinion filed November 14, 1973); Geisinger v. Geisinger, 202 N.W.2d 44, 46 (Iowa 1972).

III. The issues here raised by petitioner will be considered collectively.

■ At the threshold it should be noted that although property rights and alimony may be closely related they are distinguishable and have differing purposes. See In re Marriage of Cook, 205 N.W.2d 682, 684 (Iowa 1973); In re Marriage of Campbell, ·204 N.W.2d 638, 639 (Iowa 1973); Geisinger v. Geisinger, 202 N.W.2d at 45–46; Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968).

The Code 1971, Section 598.21 provides the basis upon which alimony and property rights are determinable. In material part it provides: "When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified."

■ Manifestly the matters to which § 598.21 alludes can only be resolved on an ad hoc basis by a fair consideration of all relevant factors. See In re Marriage of Romig, 207 N.W.2d 780, 783 (Iowa 1973); In re Marriage of Smith, 207 N.W.2d 548, 551 (Iowa 1973); In re Marriage of Carney, 206 N.W.2d 107, 109 (Iowa 1973); Schantz v. Schantz, *supra*.

IV. Mindful of the foregoing we look now to the record.

It reveals Joyce and William were 40 and 41 respectively when this 19 year marriage was terminated. At that time their children's ages were Ellen, 18; William IV, 16; Gregory, 15; Patrick, 14; and Mary, 12, all at home except Ellen, a first year university student.

Joyce, a registered nurse, was regularly employed for some period after marriage and part time thereafter until three or four years prior to trial. After commencement of the instant action she received special coronary care training and earns $3.20 to $3.40 an hour for services in her professional capacity.

It appears, however, petitioner has been afflicted with diabetes for approximately 15 years. This diabetic condition is described as "very brittle", which means her system reacts to medication in an unstable manner resulting in a relatively hazardous health condition. Resultantly Joyce can only work one or two eight hour shifts each week. That is conceded by respondent.

William is the sole stockholder-president of a grain purchase and sales corporation. His health is good and he works about 70 hours every week.

Respondent's total income for the three years prior to dissolution of the marriage was about $60,000. In brief, William's corporate salary is $15,600 per year. To this is added $1500 annually from another

company in which he holds a third share, plus several thousand dollars in dividends, interest and rental income.

During the marriage William and Joyce accumulated property having between $108,000 and $120,000 net worth.

Petitioner testified she needs $750 each month for support of the children, $500 for her own maintenance, and respondent's expenses should not exceed $400 per month.

Respondent estimates he needs a minimum of $510 but Joyce and the children can live on $565 a month.

Trial court found (1) petitioner could work full time and (2) respondent's "net usable income" for the three years prior to dissolution of the marriage was only $27,508.61, an amount reached by subtracting corporate losses and income taxes from taxable income.

As aforesaid trial court awarded petitioner (1) custody of five children with $500 a month for their support; (2) property worth about $34,000, which included a $16,000 house; but (3) no alimony.

V. The question now posed is whether under existing circumstances the limited property allocation and denial of any alimony to petitioner is just and equitable.

We shall initially focus upon trial court's finding to the effect respondent could not pay alimony sufficient "to support petitioner in the manner to which she is accustomed."

■ In the first place William's inability to maintain Joyce in her usual mode of living does not negate his duty to contribute, so far as is reasonably possible, to her support and maintenance.

Stated otherwise, petitioner's needs must perforce be balanced against respondent's ability to pay. See In re Marriage of Downing, 210 N.W.2d 436, 437 (Iowa 1973).

VI. Next to be considered is trial court's computation of William's "net usable income" by the above stated subtraction of both federal income taxes paid and corporate losses.

■ It is at once apparent the aforesaid tax deduction was appropriate. See Baker v. Baker, 224 Minn. 117, 28 N.W.2d 164, 168 (1947); Broderson v. Broderson, 30 A.D.2d 675, 291 N.Y.S.2d 892, 893 (1968); 27A C.J.S. Divorce § 233(3)(c).

■ We also here note, alimony paid under court order is deductible from taxable income. See Drapekin v. Drapekin, 185 So.2d 90, 92 (La.App.1966); Int.Rev. Code of 1954 (as amended), § 215; Mertens, Law of Federal Income Taxation, §§ 31A.01, 31A.02b (Malone rev. 1969); The Code 1971, § 422.9. See also Wetzel v. Wetzel, 35 Wis.2d 103, 150 N.W.2d 482, 485–486 (1967).

■ Looking to the other side of the coin we are satisfied trial court erred in subtracting asserted corporate losses of $23,000 during the three year period prior to dissolution of this marriage from respondent's personal income in determining his "net usable income".

At the threshold it appears any such computational approach results in a "double deduction". Obviously trial court considered losses suffered by the corporation in determining its value, and accordingly in the allocation of property. Also, as aforesaid, such losses were deducted from respondent's personal income.

■ Furthermore, such a mathematical process ignores the general rule that a corporation, even if owned by one person, is deemed a distinct entity. See Appanoose County Rural Taxpayers Assn. v. Tax Commission, 261 Iowa 1191, 1197, 158 N. W.2d 176 (1968); Quinn v. Quinn, 11 Md.App. 638, 276 A.2d 425, 430 (1971).

We are satisfied and accordingly find respondent's income for the three year pe-

riod prior to dissolution of marriage, after payment of related taxes, was approximately $50,600, or about $16,866 per annum.

It therefore follows trial court erred in finding respondent's "net usable income" for the aforesaid period was only $27,508.-61.

■ Our finding, *supra,* as to respondent's annual net income means his average monthly receipts, at trial time, totaled approximately $1400. This in turn demonstrates, and we now determine, respondent is financially able to pay petitioner alimony in the sum of $250 each month. Trial court erred in holding otherwise.

■ VII. In support of trial court's holding, with reference to property division and denial of alimony, respondent urges we consider and review the child support award of "$500 each month * * * until the youngest child * * * shall have attained the age of 18 years." On that subject the record reveals the youngest child will not attain that stage in life until December of 1977. Thus the instant support award would ultimately result in payments of $500 a month for maintenance of one child. In light of the above holding with regard to alimony we find the aforesaid allowance is patently excessive.

Therefore on remand of this case trial court shall modify and correct the instant decree in such manner as to effectively: (1) provide for a decrease of $100 in child support payments as each child respectively attains the age of 18 years, from and after the filing of this opinion, and (2) order and require respondent to pay petitioner alimony in the sum of $250 each month commencing with and effective as of the date of the decree from which this appeal is taken, such alimony payments to continue until the death of either party hereto unless petitioner shall sooner remarry.

All other provisions of trial court's decree stand affirmed.

Costs on this appeal are taxed to respondent.

Affirmed in part, reversed in part and remanded.