In re the MARRIAGE OF Duane R. NOVAK and Betty A. Novak.

Upon the Petition of Duane R. NOVAK, Appellant,

and Concerning Betty A. NOVAK, Appellee.

No. 56346.

Supreme Court of Iowa.

July 31, 1974.

Robert J. Pattee, of Pattee & Pattee, Independence, for appellant.

A. F. Craig, Jr., Independence, for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON, and McCORMICK, JJ.

MASON, Justice.

Duane R. Novak as petitioner instituted in the Buchanan district court a dissolution proceedings under chapter 598, The Code, seeking termination of his marriage to Betty A. Novak, an equitable division of the real and personal property accumulated by the parties and custody of their minor children.

He appeals from that portion of the trial court's decree dealing with distribution of the property and the award of alimony and support money to respondent.

Duane and Betty Novak were married April 16, 1950. Four children were born of the marriage: Debbie, born August 9, 1952; Cheryl, born August 9, 1955; Carolyn, born July 4, 1957; Wayne Allen, born February 11, 1963. At the time of trial Debbie was not a minor and Cheryl was to marry in the near future; thus, the issue of custody of minor children concerned only Carolyn and Wayne.

Duane is in good health and employed at Iowa Manufacturing earning an hourly wage of $4.79 but in past years he has been laid off from this employment for various lengths of time and generally does not work a full year. He did not anticipate continuing in this job in the near future.

Betty, 44 at time of trial, is a nurse's aid at St. Lukes Hospital in Cedar Rapids. She earns gross pay of about $330 per month from an hourly wage of about $1.90. She suffers from a bladder condition requiring monthly checkups at the University of Iowa Hospitals in Iowa City; medication expenses for this condition are $30–40 per month and will continue indefinitely.

The parties lived in Marion during the first part of their marriage, then on a farm north of Alburnett for a time, and moved to a 217-acre farm in Buchanan County in 1959. While Duane was in the armed forces Betty bought the original home in Marion for $4500 with $1000 from her savings and a $3500 loan from her parents. With the aid of her father, a carpenter, she made many improvements in the home during Duane's absence. In 1956 the parties sold this house for $8500, paid off the loan to Betty's father and used the remainder as a down payment on a farm near Alburnett. They purchased the Buchanan County farm in 1959 for $40,000; the money from sale of the Alburnett farm was used as a down payment. In March 1962 an uncle gave Betty $2000 as her inheritance; this amount was used as a farm payment. At time of trial expert testimony estimated the farm's value as $70,525.00, (217 acres at $325.00 each). Remaining indebtedness of the land contract was $20,800.

One hundred seven acres have been rented for $35 per acre; approximately 45 more acres could also be rented for that amount. The remaining 60 acres is pasture and has rental value of $10–15 per acre. (Trial court set the value at $10). Petitioner also owned various livestock: 22 cows at $250; 22 calves at $100; a mare and two colts worth approximately $600. There is various farm machinery, primarily a tractor and plow, worth approximately $2000. The livestock, excluding the horses, and the machinery were security for a $10,000 loan from the Security State Bank. There were also 25 acres of corn on the farm at time of trial. The record does not tell us the value of this asset. Apparently, this is used as feed for the livestock.

In recent years petitioner has not been a full time farmer; since about 1963 he has worked at various factory jobs and is presently an electrician at Iowa Manufacturing. Tax returns showing farm income or loss were part of the record; rental income included, the farm lost $510 in 1969 and showed income of $1552 in 1970 and $2320 in 1971, (including income from gate making business). Petitioner apparently does not intend to engage in full time farming in the future.

The house on the Buchanan County farm burned July 3, 1972, destroying all furnishings and clothing and personal effects of Betty and the two minor children, and Duane's winter clothing. At time of trial Duane had an insurance check for $3950 made out to both himself and Betty covering the loss. The house itself was only partially covered; a check for $8,000, the total amount of the policy, had been written by insurer but at time of trial had not been cashed. Petitioner testified the $8000 check had to be applied to the real estate contract.

In 1970 Duane purchased a lot in the town of Brandon. He added to a small building on the property and now uses the structure to store lumber. A 60-foot by 20-foot concrete slab was constructed on the property for a saw mill and Duane is now engaged in custom sawing. He estimated the real estate has a value of $2500 and the milling equipment and business is worth about $7000. A $7000 loan from the Urbana Savings Bank was used to purchase the mill and business; the loan in turn is secured by the equipment. Petitioner estimated this business would gross $20,000 and net $10,000 per year in the near future.

Betty always helped on the farm doing chores and even driving the tractor and performing other heavier work while the couple was engaged in farming. While Duane operated a gate making and lumber business on the farm she pulled nails, stacked lumber and did other work involved with the business. In general, she performed the normal chores and duties of a farm wife.

The parties own a 1970 G.M.C. truck worth $2200 and a 1967 Pontiac worth $800; Duane has possession of the truck and Betty the car. Both are security for a $1700 note with Security State Bank. Duane also owns a 1964 Volkswagon worth approximately $400.

Potential rental income of the farm property totaled $5850 per year based on 150 acres at $35 each and 60 acres at $10 each. Taxes on the farm are approximately $1250 annually and insurance about $100. Interest on the land contract debt of $20,800 is four and one half percent per year.

Respondent's gross income from employment is about $4000 per year. She lives in a home purchased for her by her parents and thus has no rent liability. Petitioner's income from employment at Iowa Manufacturing is about $6600 considering the normal periods for which he is laid off. His income in the future cannot be well approximated but probably will increase, perhaps substantially, as the milling business continues. In the past the farm has produced little or no income; if all the land is rented the income after taxes and insurance but before payments of principal and interest would be about $4400 to $4800. Apparently petitioner does not intend to pursue farming as his sole occupation in the future.

The trial court found there had been a breakdown of the marital relationship between the parties to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be preserved and decreed dissolution of the marriage. Custody of the two minor children was awarded to petitioner. As an award of alimony and support respondent received the following: (1) the entire insurance indemnity check of $3950 for fire loss of household furnishings; and (2) judgment

596

against petitioner for $48,000 payable in 120 installments of $400 each, said judgment constituting a lien for the unpaid principal amount on all real estate now or hereafter acquired by petitioner. She was awarded the Pontiac car and her home in Cedar Rapids subject to indebtedness thereon to her parents which she is to assume and pay. Respondent and petitioner were ordered to endorse and make payable to the contract vendor the $8000 insurance check for application to the unpaid purchase price on the real estate contract.

Petitioner received the following: (1) 217-acre farm, subject to unpaid purchase price which he is to assume and pay; (2) livestock and any feed presently on the farm; (3) machinery presently on the farm; (4) real estate and machinery on the lot in Brandon (the saw mill); (5) G. M.C. truck and Volkswagon auto and petitioner shall assume and pay the total incumbrance of $1700 on the truck and Pontiac car. Petitioner also was ordered to assume and hold respondent harmless for any indebtedness to the Security State Bank of Independence and the Urbana Savings Bank. These loans were a $10,000 note secured by the livestock and farm machinery, and the $7000 loan used to purchase the saw mill.

The appeal presents two issues for review: (1) whether the trial court erred in ordering proceeds of the $8000 insurance check to be paid to the contract vendor and applied on the unpaid balance of the real estate contract; and (2) whether the alimony and support money and property division awarded respondent were justified under the circumstances shown by the record.

I. Petitioner approaches the problem arising from the first issue stated for review as one involving the law of contracts, vendor and purchaser or the rights of mortgagors and mortgagees. He complains that the trial court without evidence as to the terms of either the insurance contract or the one for purchase of the farm compelled petitioner to pay the proceeds received as a result of the fire loss in 1972 to the contract vendor. He seeks to have this portion of the decree overturned and the case remanded to the trial court for an order to award the total amount of the insurance proceeds to petitioner for such use as he desires consistent with the farm sale contract and the insurance contracts.

A copy of the real estate contract is found in the clerk's transcript and was apparently filed with petitioner's motion for new trial.

The trial court refused to hear the motion for new trial since petitioner had perfected an appeal the same day he filed the motion. Of course, the trial court was correct. It is well settled in this state that after an appeal is perfected the trial court has no further jurisdiction over the controversy until some part thereof is remanded back for further action. Scheffers v. Scheffers, 241 Iowa 1217, 1227, 44 N.W.2d 676, 681; McCauley v. Municipal Court of D. M., 254 Iowa 1345, 1346, 121 N.W.2d 96, 97; and authorities cited in these opinions.

The merits of the issue do not raise a contract question; the insurance proceeds check was payable to both petitioner and respondent and constituted property or an asset of the parties. The problem is whether the disposition as made by the court of the proceeds from the fire loss is justified. This aspect of the question will be discussed in the next division.

II. The statute provides that when the court is satisfied from the evidence that there has been a breakdown of the marital relationship to the extent the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood the marriage can be preserved the court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonably support or maintenance of any dependent children or either spouse. Section 598.17, The Code.

■ Although alimony on one hand and allocation of property rights on the other are distinguishable and have different purposes in marriage dissolution proceedings, Knipfer v. Knipfer, 259 Iowa 347, 351–354, 144 N.W.2d 140, 142–144, In Re Marriage of Murray, 213 N.W.2d 657, 659 (Iowa 1973), they are still closely related in the matter of determining the amount to be allowed. Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968).

■ Of course, fault is not to be considered. In Re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972). In resolving the often troublesome problems concerning distribution of property this court has consistently held many factors must be considered, precedents are of little value, and the determination depends on the facts of each case. In Re Marriage of Cook, 205 N.W.2d 682, 684 (Iowa 1973) and In Re Marriage of Romig, 207 N.W.2d 780, 783 (Iowa 1973). Section 598.21, The Code, provides that alimony and property rights are to be determined upon the basis of what is justified. Whether the property distribution here is justified can be determined only be fair consideration of all relevant factors. In Re Marriage of Murray, 213 N.W.2d at 659; see also criteria set out in Schantz v. Schantz, 163 NW.2d at 405.

■ Review of a decree granting dissolution of marriage, determining property rights and ordering alimony payments is de novo. It is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, is preserved in the course of the trial proceedings; while we give weight to the findings of the trial court, we will not abdicate our function as trier de novo on appeal. In Re Marriage of Cook, 205 N.W.2d at 684.

Petitioner's specific arguments can only be examined in conjunction with the whole record and the principles stated above. The dollar amount of all property, machin-

ery, etc., including the insurance proceeds, prior to division was $113,600. Petitioner received property totaling $100,850.00. (Farm, feed, Volkswagon, truck, farm machinery, horses, livestock, saw mill equipment and real estate). Respondent's brief shows in addition petitioner received a camper valued at $550. Petitioner was required to assume liabilities totaling $31,500.00. (Various bank loans and notes and the remainder of the farm indebtedness).

■ Respondent received goods totaling $4750. (Household goods, insurance check and 1967 Pontiac). But she was held harmless on all outstanding liabilities. Subtracting liabilities from assets, petitioner at time of decree received property and goods worth $69,350.00. Finally, the court ordered petitioner to pay respondent $48,000 over a period of ten years in equal monthly installments of $400. The full amount must be considered and not the amortized total over a period of ten years because the decree did not provide for a lump sum payment. In Re Marriage of Gudenkauf, 204 N.W.2d 586, 588 (Iowa 1973), cited by respondent, has no applicability in this situation.

It is obvious the settlement left all income producing property to petitioner. He is in good health, is skilled and testified the saw mill business alone would net $10,000 a year in the future. In contrast, respondent has a health problem, is not skilled and probably will remain at relatively the same level of employment in the future. The record also shows respondent essentially used her own money to finance the down payment of the farm and later applied a $2000 inheritance to a contract payment; she also did farm work and other heavy work in the gate making and lumber business operated at the farm for a period of time.

Although petitioner was ordered to assume all debts and obligations he also received all collateral securing these liabilities. Petitioner's problem is simply a

shortage of cash to meet all the financial obligations for which he is responsible. It may be impossible for him to do so in which case various things or parts of the real estate would have to be sold. This possibility does not necessarily mean the property distribution was inequitable, however. Furthermore, if the saw mill business is as successful as petitioner envisions, his financial situation would be considerable eased. The record shows the value of the farm has greatly increased since its purchase; respondent made a significant financial contribution to its purchase and also worked steadily on its operation.

Admittedly, petitioner has greater support obligations, in fact, because he has custody of the two minor children and respondent was not ordered to make any support payments. Of course, both parents are liable for support of their children, not necessarily in equal shares, however, but proportionately according to their ability to pay. McDonald v. McDonald, 183 N.W.2d 186, 189 (Iowa 1971); Dworak v. Dworak, 195 N.W.2d 740, 743 (Iowa 1972); Spaulding v. Spaulding, 204 N.W.2d 634, 636 (Iowa 1973). Respondent's income, her earning capacity, and petitioner's income and earning capacity differ considerably. Requiring support of the minors to be undertaken completely by petitioner does not appear unjustified under the circumstances and does not render the property distribution inequitable.

In the circumstances here the distribution of the assets of the parties and the award of alimony and support money to respondent as made by the trial court are justified.

III. In a separate division of her brief respondent argues the trial court erred in awarding custody of Wayne to petitioner and asks this court to award custody to her. Petitioner argues this issue has not been properly presented to this court and therefore cannot be entertained.

The issue of custody was raised in the pleadings and evidence was heard on the problem at trial; the trial court awarded custody to petitioner after finding Wayne was strongly attached to his father, had adjusted well to his sole care and custody, and would possibly undergo severe psychic trauma if he were placed in his mother's home. Respondent is in effect making an appeal from the trial court's ruling regarding custody without taking a cross-appeal.

Petitioner argues this question could be entertained here only if respondent cross-appealed; her failure to do so therefore precluded examination of this issue. He cites Bartels v. Hennessey Brothers, Inc., 164 N.W.2d 87, 92 (Iowa 1969), a cause in equity where this court stated the principle that an appellee who never appeals nor cross-appeals can have no greater relief or redress here than was accorded appellee by the trial court. See also Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1115, 109 N.W.2d 695, 702; In re Estate of Clausen, 258 Iowa 324, 331–332, 139 N.W. 2d 196, 200–201; Morris Plan Co. v. Bingham F. and Gr. Co., 259 Iowa 404, 424, 143 N.W.2d 404, 417; 5 Am.Jur.2d, Appeal and Error, section 707.

Perhaps it could be argued this is not a situation where an appellee not appealing asks for greater relief than given in the trial court; hence, the principle in Bartels and cases cited there is not directly on point. In this connection it should be noted the principle of not allowing greater relief to appellee not appealing is applicable in equity actions involving modification of a divorce decree. See Sandler v. Sandler, 258 Iowa 84, 87, 137 N.W.2d 591, 592.

Failure to bring a cross-appeal in the manner provided by the Rules of Civil Procedure precludes examination of this question upon appeal. Review is de novo as respondent states but it is such only on matters properly presented to this court. In Re Marriage of Williams, 199 N.W.2d at 346.

IV. Respondent's attorney has requested an allowance of attorney fees for

services rendered on appeal. Included in respondent's brief and argument is an itemized statement showing in chronological order the type of services rendered and the approximate time spent. We determine petitioner should be ordered to pay $1000 toward respondent's attorney fees for services rendered on this appeal payable within six months of the date of the filing of this opinion.

With directions to the trial court to enter judgment for such amount the case is therefore

Affirmed and remanded.