**IN THE COURT OF APPEALS OF IOWA**

No. 13-0612
Filed March 26, 2014

**IN RE THE MARRIAGE OF PEGGY J. TROYNA
AND ROBERT C. CLINE**

**Upon the Petition of
PEGGY J. TROYNA,**
        Petitioner-Appellee,

**And Concerning
ROBERT C. CLINE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Chickasaw County, Richard D.

Stochl, Judge.



        A former husband challenges the amount of his equalization payment

required by the dissolution decree.  **AFFIRMED AS MODIFIED.**



        Linda Jensen Hall of Gallagher, Langlas & Gallagher, P.C., Waterloo, for

appellant.

        David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles

City, for appellee.



        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Robert Cline challenges the dissolution decree's requirement he make an $11,251.50 equalization payment to his ex-wife Peggy Troyna. He contends the district court's asset valuation was flawed and the court failed to consider relevant factors under Iowa Code section 598.21(5) (2011). Because the parties agree the court misstated the value of two assets, we modify the equalization payment to $6,360.19.

## I.    Background Facts and Proceedings

Robert planned to retire from John Deere in December 2001. In November 2001, he entered a prenuptial agreement with Peggy. The agreement provided in the event of divorce they would have no claims to the other's premarital property or for spousal support or legal fees. Robert owned significantly more property than Peggy, including a house in Hudson with a net value of approximately $120,000.[1] The parties married on December 12, and Robert retired on December 31, 2001.

In January 2010 Peggy's mother passed away. Thereafter, through mid-December 2011, Peggy received about $57,000 in trust distributions. Peggy testified she spent $10,000 of her inheritance to purchase two computerized sewing machines. In December 2011, the parties separated. On December 22, 2011, Peggy filed a petition to dissolve the ten-year marriage.

The district court held a trial on December 12, 2012. At that time, the parties had already divided their personal property items. Both parties testified to

---

[1] The parties sold that house to purchase a retirement home in Sabula and then sold the Sabula house to buy the marital home in Nashua.

health issues. Peggy, who was fifty-nine years old at the time of trial, has arthritis and recently underwent hip surgery. Her physical condition limited her ability to work in her previous occupation as a licensed practical nurse. Instead she took employment as a teacher's aide for fifteen dollars per hour. Robert, who was sixty-six years old, suffers from diabetes, heart disease, arthritis, and congestive heart failure and is considered disabled. The issues at trial included the enforceability of the prenuptial agreement and the division of the parties' marital assets and debts.

On March 8, 2013, the district court issued its decree and held each party responsible for any debts individually incurred since their separation. The court included the following charts listing the parties' marital and non-marital assets. Robert received the house in Nashua and its mortgage. His marital assets totaled $40,037.00.

| ASSET | VALUE |
| --- | --- |
| 2005 GMC Pickup | $14,500 |
| 1974 Jeep | $4,500 |
| John Deere Pension | Non-Martial Asset |
| Veridian Credit Union Account | $437 |
| John Deere Tractor | $5,000 |
| Log Splitter | $4,250 |
| John Deere Riding Lawn Mower | $7,000 |
| 2008 Trailer | $900.00 |
| Tools | $450 |
| John Deere Gator | $3,000 |
| Fidelity IRA | Non-Martial Asset |
| Total | $40,037.00 |

The court held Robert responsible for paying the following bills: GM World Mastercard ($222); Jerry Sport's Center, Inc., account ($879); Kwik Trip Card

($392); the Knight Rifles bill ($50); and the Family Health Center bill ($35), which totaled $1,578.

Peggy received $17,534 in marital assets.

| ASSET | VALUE |
|---|---|
| 2007 Toyota Camry | $9,300 |
| Savings and Checking Accounts | $930 |
| PACE Trailer | $3,000 |
| Comp. Systems Revenue Plan | $3,589 |
| Fidelity IRA | $565 |
| Redlin Prints | $150 |
| Sewing and embroidery machines | Non-Marital Asset |
| Total | $17,534.00 |

The court held Peggy responsible for the following debts:  her Chase MasterCard ($15,622); the Convergent Clinic bill ($1,341), the Covenant Medical Center bill ($215), the Health Care Solutions account ($12), her Family Health Center bill ($473), and the Medsource account ($195), which totaled $17,858.[2]

The difference between the awarded assets was $22,503.  Dividing the difference by two, the district court ordered Robert to pay Peggy an equalizing amount of $11,251.00.   The court also found the prenuptial agreement was binding on the parties and declined Peggy's request for alimony and attorney fees.

Robert filed a motion to amend or enlarge pursuant to Iowa Rule of Civil Procedure 1.904, pointing out two paragraphs of the decree that stopped midsentence.  Robert contended these omissions left it unclear whether the court properly allocated the parties' debts.  Peggy filed a response, admitting the

---

[2] The debt amounts were not listed in the decree.  Our values are taken from Robert's asset and debt worksheet.

decree "appeared to have parts missing," but nevertheless asked the court to overrule the motion to enlarge. The district court denied the motion to enlarge. Only Robert appeals the decree.

## II. Standard of Review

We review dissolution of marriage decrees de novo as they are heard in equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We review an equalization payment to be sure it does equity as part of the overall property settlement. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013).

## III. Analysis

The question before us is whether the decree's equalization payment of $11,251.50 was part of an equitable division of the marital property. "An equitable distribution of marital property, based upon the factors in [Iowa Code section] 598.21(5), does not require an equal division of assets." *In re Marriage of McDermott,* 827 N.W.2d at 682 (Iowa 2013). But equality often is most equitable, and our courts have "repeatedly insisted upon the equal or nearly equal division of marital assets." *Id.*

Robert argues he should not owe any equalization payment to Peggy. He criticizes the district court for not including a debt allocation in the decree and for not properly weighing the relevant considerations in section 598.21(5).[3] While

---

[3]     The legislature listed the following factors:
        a. The length of the marriage.
        b. The property brought to the marriage by each party.
        c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

equity requires attention to the factors in section 598.21(5), we keep in mind "there are no hard and fast rules governing economic issues in dissolution actions." *Id.*

Before discussing what he believes are the critical factors from section 598.21(5), Robert points out two flaws in the district court's asset calculations. First, Robert argues the court's valuation of the John Deere riding lawn mower at $7,000 did not take into account the $6,782.62 still owed on the implement. Robert asserts the value of the lawn mower is actually $217.38. Second, he asserts the John Deere Gator, valued at $3,000, was a premarital asset covered by the prenuptial agreement. Robert sets out the following values of his assets:

---

d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training, or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5) (2011).

| ASSET | VALUE |
|---|---:|
| 2005 GMC Pickup | $14,500 |
| 1974 Jeep | $4,500 |
| John Deere Pension | Non-Martial Asset |
| Veridian Credit Union Account | $437 |
| John Deere Tractor | $5,000 |
| Log Splitter | $4,250 |
| John Deere Riding Lawn Mower | $217.38 |
| 2008 Trailer | $900.00 |
| Tools | $450 |
| John Deere Gator | Non-Martial Asset |
| Fidelity IRA | Non-Martial Asset |
| Total | $30.254.38 |

Under this revised asset valuation, if we were to follow the district court's original process for equalizing the parties' distributions, Robert would owe Peggy an equalization payment of $6,360.19.[4]

But Robert contends he should be required to pay nothing, pointing to several factors in section 598.21(5). He describes their ten-year union as a marriage of "moderately short duration." He emphasizes he brought considerably more property into the marriage and should be entitled to a greater share of the post-marital assets. He also contends his failed health has rendered him unable to make any equalization payment.

Peggy agrees Robert's equity in the mower is only $217.38 and also recognizes the Gator was Robert's pre-marital property. But she characterizes Robert's argument on appeal as "cherry pick[ing] numbers" to reduce her equalization payment. She contends if the district court had listed the marital assets and the debts of both parties, Robert's net distribution would be

---

[4] $30,254.38-17,534=12,720.38÷2=$6,360.19

$28,672.98, while hers would be negative $128.21—requiring Robert to make an equalization payment of $14,400.59.[5] She asks us to increase her equalization payment on appeal.

In his reply brief, Robert agrees the decree was incomplete in its listing of debts. He brings up the fact he owes more than $10,000 in attorney fees,[6] as well as a mortgage of $144,000, leaving him with a net value of $12,000 in the house awarded to him.[7] He asserts his net award (including non-marital property) was $30,207 and Peggy's net award (including non-marital property) was $12,475.[8] Robert contends "a fair and equitable division of assets and debt does not end with simple mathematics." In his view, equity requires eliminating the equalization payment.

First, we decline Peggy's invitation to increase Robert's equalization payment. Because Peggy did not appeal or cross-appeal from the decree, she can have no greater relief than was awarded by the district court. *See In re Marriage of Novak*, 220 N.W.2d 592, 598 (Iowa 1974) ("Failure to bring a cross-appeal in the manner provided by the Rules of Civil Procedure precludes

---

[5] $28,672.98 – (-128.21)=$28,801.19÷2=$14,400.59

[6] Attorney fees incurred in dissolution proceedings are not counted as marital debt. *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

[7] The district court did not divide the value of the home because only Robert owned a home at the time of the marriage and the proceeds from the sale of that house allowed the couple to purchase subsequent homes. *See In re Marriage of Johnson*, 499 N.W.2d 326, 328 (Iowa Ct. App. 1994) ("Property brought into a marriage by one party need not necessarily be divided.").

[8] Robert does not include any attorney fees owed by Peggy in his calculations.

examination of this question upon appeal. Review is de novo . . . but it is such only on matters properly presented to this court."). But even if the issue was properly before us, we would find it equitable for the district court to hold Peggy responsible for the entire amount of her credit card debt[9] and other outstanding bills, even if some of the spending benefitted Robert. *See In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006) (finding "even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable"); *see also Hansen*, 733 N.W.2d at 703–04 (finding no basis for disturbing trial court's disposition of credit card debt when level of debt was incurred after separation without husband's knowledge).

Second, the parties agree the district court erred in its valuation of the lawn mower and by including the Gator in the divisible marital property. When these corrections are made Robert's total award of marital assets is $30,254.38, compared to Peggy's assets totaling $17,534. We conclude it is equitable to incorporate these corrections into a revised equalization payment in accord with the distribution scheme followed by the district court. *See Hansen*, 733 N.W.2d at 703 (correcting trial court's calculations). Accordingly, we reduce Robert's equalization payment to $6,360.19.

We do not accept Robert's position that the factors in section 598.21(5) call for completely relieving him of the obligation to make an equalization payment to Peggy. The parties entered into this marriage later in life. The

---

[9] Peggy testified she "lived off that credit card" and used it to purchase a stove and refrigerator for her home, but also said "Bob has things I purchased on that credit card."

marriage lasted ten years, not an insignificant amount of time. Robert benefits from the district court's enforcement of the prenuptial agreement. He brought more property into the marriage and is leaving the marriage with more net assets than Peggy. Because Peggy is seven years younger than Robert, she has some continued earning potential, but it is limited by her health issues. While Robert also faces medical challenges, his retirement income will be more substantial than Peggy's. Under these circumstances, we find an equalization payment is necessary to achieve equity in the property distribution.

**AFFIRMED AS MODIFIED.**