**IN THE COURT OF APPEALS OF IOWA**

No. 16-1527
Filed July 6, 2017

**IN RE THE MARRIAGE OF TERRENCE J. WILLIAMS**
**AND TAMMY M. WILLIAMS**

**Upon the Petition of**
**TERRENCE J. WILLIAMS,**
        Petitioner-Appellee,

**And Concerning**
**TAMMY M. WILLIAMS,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Palo Alto County, Don E. Courtney,

Judge.


        A mother appeals the court's modification order awarding her former

husband physical care of their daughter.  **AFFIRMED.**


        Matthew G. Sease of Kemp & Sease, Des Moines, for appellant.

        Terrence J. Williams, Ruthven, self-represented appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Tammy Williams appeals a district court order placing physical care of their now seven-year-old daughter, A.N.W., with her former husband, Terrence Williams. Neither party disputes a substantial change in circumstances warrants modification of the dissolution decree. The question before us is whether Tammy or Terrence can better tend to the child's needs. The answer is a close call. As the district court observed, "both parents love this child and are equally qualified to care for this child." Like the district court, we conclude the tipping point is the likelihood Terrence will be the more effective parent when it comes to fostering a positive relationship between A.N.W. and the parent who is not awarded physical care. Accordingly, we affirm the modification order.

## I.      Facts and Prior Proceedings

Tammy and Terrence married in 2007. Their daughter A.N.W. was born in 2009. They divorced in 2011. At the time of the divorce, the family lived in Minnesota. The Minnesota decree granted the parties joint legal custody and granted Tammy "sole physical custody and residence" of A.N.W. Tammy was A.N.W.'s primary caregiver for the next nearly four years.

Terrence moved to Iowa after the divorce. In January 2015, Terrence filed a petition for custody modification, asserting joint physical care was a viable option because Tammy had also relocated to Iowa and lived in close proximity to Terrence. In July 2015, the parties entered an agreement to share care of A.N.W. because they lived across the street from one another in Graettinger, Iowa. The stipulation included this provision: "If either party moves out of the Graettinger/Terril School district, this shall be the basis for modification of

custody due to the inability to continue joint physical care." The district court entered an order approving the stipulated modification.

Three months later, on October 1, 2015, Tammy filed a petition to modify, alleging Terrence moved away from Graettinger within days of the court's approval of the modification. Both parties testified at a June 2016 hearing on the modification request. According to the evidence, both parents had steady employment. Tammy worked at a nursing home in Emmetsburg. Terrence also worked in Emmetsburg at a swine farrow-to-finish operation.

Tammy testified, soon after the stipulation was entered, Terrence moved to Ruthven, which she alleged was not located in the Graettinger-Terril Community School District. She also testified she had since moved to Fenton, where she lived with her fiancé. Under cross-examination, Tammy acknowledged her fiancé had spent time in prison on a theft conviction. Tammy also testified regarding the parties' conflict, which sometimes escalated into physical confrontations. Tammy admitted being charged with domestic-abuse assault in January 2015 as a result of a fight with Terrence. Tammy also obtained protective orders based on abuse by Terrence toward her. Under the protective order, Terrence was restricted to communicating with Tammy concerning their daughter only by email. Terrence was arrested for violating that restriction by sending Tammy a text message using a cell phone Tammy had provided A.N.W.

In further testimony, Tammy acknowledged she had A.N.W. baptized without informing Terrence. When asked if Terrence had a right to know about the baptism, she answered "yes and no." She explained she was Lutheran and

Terrence was Baptist but asserted he "didn't show any interest" in having their daughter baptized. Similarly, Tammy testified she did not communicate with Terrence before enrolling A.N.W. in the North Union School District, which serves the town of Fenton. At the time of the modification trial, A.N.W. was about to enter first grade. She had an individualized education plan (IEP) to address a learning disability. Tammy told the court she had taken steps to have their daughter's IEP transferred to her new school.

For his part, Terrence testified to his active involvement in A.N.W.'s life, including attending medical appointments and school conferences. He objected to Tammy's unilateral decision to have their daughter baptized. He also testified A.N.W. had developed a close relationship with her two half-sisters, who are being raised by Terrence. He testified, even after his move to Ruthven, A.N.W. still attended school in Graettinger, which was only a fifteen-minute drive. He testified Tammy knew he was planning to move to Ruthven and both parents believed Ruthven was actually in the Graettinger-Terril district.[1] Terrence testified he believed it was in A.N.W.'s best interest to stay in the same school, given her IEP for "special education."

In September 2016, the district court issued an order placing A.N.W. in the physical care of Terrence and granting liberal visitation to Tammy. The court was critical of Tammy's decisions to enroll A.N.W. in a different school district without consulting Terrence and to "baptize the child without consulting or inviting Terrence." The court noted these decisions were contrary to Tammy's

---

[1] During his testimony, Terrence pointed out the school district's website indicates the district serves Graettinger, Terril, Ruthven, and Ayrshire.

"responsibility as a joint legal custodian of the child." The court also noted Tammy had provided little information to the court about the suitability of her fiancé as a stepparent. Finally, the court embraced testimony from Terrence that A.N.W. had a close relationship with her half-siblings and would benefit from living in the same household.

Tammy appeals the court's modification order.

## II.     Standard of Review

Because petitions to modify the physical-care provisions of a divorce decree lie in equity, our review is de novo. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Although we give weight to the district court's factual findings, especially on issues of credibility, ultimately we are not bound by them, and we must make an independent determination of the facts in reaching our legal conclusion. *Id.*

## III.    Analysis

### A.  Modification of Physical Care

A party seeking modification of a decree's custody provisions has two hurdles: (1) prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered and (2) prove a superior ability to minister to the needs of the child. *Id.* In this case, neither party disputes the occurrence of a substantial change in circumstances. The only question on appeal is whether Tammy or Terrence is better suited to minister to A.N.W.'s needs.

A non-exclusive list of factors for determining what custody arrangement is in a child's best interests is found in Iowa Code section 598.41(3) (2016), and in

*In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). Especially pertinent to our decision today are the following factors: the historic pattern of caregiving, whether each parent can support the other parent's relationship with the child, the relationship between the child and her half-siblings, and whether a history of domestic abuse exists.

Tammy argues the district court should have decided she was the "more suitable and steady caretaker" for A.N.W. In support, she points to her role as the primary caregiver for almost four years following the couple's divorce. Tammy is correct that the Minnesota court decided she was the preferred custodian in granting her physical care of A.N.W. in the original 2011 decree. Tammy is also correct that she then provided the bulk of A.N.W.'s care in those early years. But Tammy herself agreed to share care with Terrence when the two lived in close proximity in Graettinger. As a result of that joint stipulation, accepted by the Iowa court, both Tammy and Terrence are deemed "suitable to be primary care parents." *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002). Moreover, while the "approximation principle" focusing on historic patterns of caregiving is an important factor in deciding physical care, other circumstances may outweigh the value of that continuity. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695–97 (Iowa 2007).

In this case, the district court placed greater weight on two other circumstances: (1) Tammy's failure to include Terrence in important decisions about A.N.W.'s upbringing, including her religious affiliation and her future schooling, and (2) the value of a close association between A.N.W. and her half-sisters in Terrence's care. In our de novo review, we likewise find those

circumstances to be compelling here. Fostering the long-term relationship with the parent who does not have physical care is an important role of the physical-care parent. *See In re Marriage of Kleist*, 538 N.W.2d 273, 277 (Iowa 1995). The district court here was appropriately skeptical of Tammy's ability to foster A.N.W.'s relationship with Terrence, given Tammy's tendency to exclude Terrence when making crucial choices for their daughter. We concur with the district court's assessment that Terrence promises a greater ability to "effectively assure the child the opportunity for maximum continuing physical and emotional contact with the other parent."

In addition, Tammy downplays the importance of A.N.W's relationship with her half-sisters, arguing on appeal the only evidence of their closeness came from Terrence's testimony. We find the district court was entitled to accept that assessment from their father, especially without any evidence in the record to the contrary. The district court was correct in expressing concern about the separation of the sisters. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) (applying principle siblings and half-siblings should be separated only for compelling reasons in dissolution actions).

Finally, Tammy attacks Terrence's testimony at the modification hearing as "dishonest" and contends the district court should have given more serious consideration to the fact she obtained protective orders against him. We are not persuaded on either point. The district court, at least implicitly, found Terrence to be credible. We pay close attention to such findings. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (explaining the trial judge deciding a dissolution case "is greatly helped in making a wise decision about the parties by

listening to them and watching them in person"). Moreover, the district court recognized the contentious nature of the parties' relationship. Both Terrence and Tammy made allegations of domestic abuse against the other. But the record does not support a finding Terrence had engaged in a "history of domestic abuse" against Tammy as contemplated by Iowa Code section 598.41(3)(j).

After reviewing all of the relevant factors, we conclude placing A.N.W. in her father's physical care is in the child's best interests.

### B. Visitation and Dependency Exemption

In his appellee's brief, Terrence raises two issues of his own, arguing the district court erred in awarding Tammy visitation for all Christmas holidays and in allowing Tammy to claim A.N.W. as a dependency exemption each year. Because Terrence did not file a cross-appeal from the modification order, he can have no greater relief than the relief awarded by the district court. *See In re Marriage of Novak*, 220 N.W.2d 592, 598 (Iowa 1974). Although our review is de novo, we can only review matters properly presented on appeal. *See id.* ("[T]he principle of not allowing greater relief to appellee not appealing is applicable in equity actions involving modification of a divorce decree."). We decline to address his claims.

### C. Attorney Fees

In a proceeding for the modification of a dissolution decree, "the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. Terrence was the prevailing party on the physical-care issue, but considering the parties' relative incomes, the court ordered the parties to pay their own attorney fees. We find no abuse of

discretion in the court's ruling. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999).

Tammy also requests appellate attorney fees. An award of appellate attorney fees rests within our discretion. *In re Marriage of Erickson*, 553 N.W.2d 905, 908 (Iowa Ct. App. 1996). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party seeking fees was obligated to defend the order on appeal. *Id.* Based on the foregoing, we decline to award Tammy appellate attorney fees. Costs are assessed to Tammy.

**AFFIRMED.**