## IN THE COURT OF APPEALS OF IOWA

No. 19-1795
Filed July 1, 2020

IN RE THE MARRIAGE OF THOMAS HARE
AND CHRISTINA HARE

Upon the Petition of
**THOMAS HARE,**
     Petitioner-Appellant,

**And Concerning
CHRISTINA HARE,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Clay County, Carl J. Petersen, Judge.

A former husband appeals a spousal support award. **AFFIRMED.**

Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellant.

Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

Thomas Hare challenges the district court's award of traditional spousal support to his former wife, Christina Hare. He asks us to reduce the amount and duration of the support. Because Thomas has not shown a failure to do equity between the parties, we affirm.

### I. Facts and Prior Proceedings

Thomas and Christina married in 2000. It was a second marriage for both of them. Each had two children from their prior marriages. But they had no children in common.

Neither Thomas nor Christina pursued formal education beyond their high school diplomas. Thomas runs his own business, Hare Painting and Sandblasting. Started in 1981 and incorporated in 1993, the business involves mostly commercial sandblasting jobs. His work is physically demanding; some days he may lift up to fifty eighty-pound bags of blasting media. Thomas's son from his first marriage is the only full-time employee of the company. The business is successful. Over the four years before the dissolution, Thomas earned an average of $77,719 annually. He also managed rental houses, bringing in another $22,888 per year. Thomas testified he was in good health. And he did not carry health insurance.

On the expense side, Thomas estimated his monthly cost of living was $1630. That did not include any monthly rent or house payment. Thomas had a spousal support obligation of $500 per month for his first wife. But she died shortly before this dissolution trial.

Christina's work history has been less steady and less profitable. After her first marriage ended, she worked for about four years at a commercial chicken

farm. The hard physical labor took a toll on her back and shoulders. After marrying Thomas, Christina briefly worked part time. She started her own cleaning business and also served as a courier for a local bank. But she gave up those positions because of her increasing back pain. She suffered from degenerative disc disease and had three herniated discs. She underwent chiropractic treatment and prolotherapy injections, as well as physical and massage therapy. A chiropractor opined that she could expect functional improvement with continued treatment, but the pain may not fully resolve. Aggravating her back trouble, Christina had an automobile accident in 2018.

Still, in early 2019, Christina restarted her cleaning business, as well as performing part-time work for Home Instead Senior Care. The district court found that her four-year income average was $13,040. The court believed her earning capacity was "significantly impacted by her long-term history with back pain." She testified that she obtained health insurance at no cost through "Obamacare." Christina testified she expected to retire at age sixty-six, nine years after the dissolution trial. She did not have any type of retirement account. Christina estimated her monthly expenses at $3568. The district court found that figure high, concluding a reasonable figure would be $2500.

In identifying and distributing the couple's property, the district court rejected Thomas's claim that his business was a non-marital asset not subject to division. The court set the value of the business at $225,000 and awarded it to Thomas. The court also awarded Thomas a shop building used by the business, valued at $50,000, as well as three other real properties with a combined value of $111,000.

The court awarded Christina the marital home, valued at $230,000.[1] The net difference in the overall property distribution was $107,900. Aiming for an even split, the court ordered Thomas to pay a $54,000 cash settlement to Christina.

On spousal support,[2] the parties presented widely varying requests. Christina asked for $2500 per month in traditional alimony. Thomas pushed for support in the amount of $500 for three years. Landing in between, the district court ordered Thomas to pay Christina spousal support of $1500 per month for seven years and then $750 per month until her death, remarriage, or cohabitation. Thomas appeals, renewing his argument for three years of alimony at $500 per month. Christina defends the district court's award and seeks appellate attorney fees.

## II.     Scope and Standards of Review

We review dissolution appeals de novo. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). We give weight to the district court's factual findings, particularly where it makes credibility determinations. *Id.* We allow the district court "considerable latitude" in fashioning an award of spousal support. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). That is because the district court occupies the best perch to evaluate the positions of parties. *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015). Thus, "we should intervene on appeal only where there is a failure to do equity." *Id.*

---

[1] The court also awarded her a $10,500 liability, reflecting an estimate from a specialized cleaning company for removal of bat guano, an ongoing issue at the Hares' house.

[2] Although the legislature changed the nomenclature from alimony to spousal support, we use the terms interchangeably in this opinion.

### III.     Analysis

### A.     Spousal Support

Thomas challenges only one aspect of the decree—the spousal support award.  He agrees their situation demands some level of support for Christina.  But he contends the decree sets the amount too high and the duration too long.  He gives three reasons: his age, the nature of his employment, and the property distribution.

On the other side, Christina defends the award.  She highlights the length of their marriage and their earning disparities.  Central to her position is the evidence that she cannot be self-sufficient because of her physical impairment.

As a first principle, divorcing partners have no inherent right to spousal support.  *Hansen*, 733 N.W.2d at 704.  Rather, it is a stipend paid by one spouse in place of their legal obligation to provide support.  *See In re Marriage of Francis,* 442 N.W.2d 59, 62 (Iowa 1989).  When deciding whether to award spousal support, for a limited or indefinite time, courts consider these statutory factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.

> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1) (2018); *see In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016). In marriages of long duration, as here, our supreme court has emphasized "[t]he imposition and length of an award of traditional alimony is primarily predicated on need and ability." *See Gust*, 858 N.W.2d at 411 (citing *In re Marriage of Wendell,* 581 N.W.2d 197, 201 (Iowa Ct. App.1998)).

Here, the marriage lasted nineteen years, just below the twenty-year "durational threshold" noted in *Gust* for "serious consideration for traditional spousal support."[3] 858 N.W.2d at 411. At the time of trial, Thomas was sixty-two and Christina was fifty-seven years old. Thomas enjoyed good health. Christina had serious back problems that limited her ability to work. Neither party pursued higher education.

We consider the division of marital property along with the spousal support decision. *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). The district court equally divided the marital property. Still, Thomas points out that his equalization payment, combined with the proceeds Christina will have from selling the house, provides her with $273,500 cash on hand. He asserts, by contrast, he will not have that kind of cash available. Christina counters that

---

[3] *Gust* does not treat twenty years as a hard line. In fact, it cites two cases in which the length of the marriage fell slightly short. 858 N.W.2d at 411 (*In re Marriage of Geil*, 509 N.W.2d 738 (Iowa 1993) (nearly nineteen years) and *In re Marriage of Murray*, 213 N.W.2d 657 (Iowa 1973) (nineteen years)).

Thomas had $75,000 in non-marital property available to him. She also underscores his greater earning capacity. And she stresses her inability to become self-supporting. We agree with Christina that the relevant factors from section 598.21A support the district court's award.

A major point of contention between the parties is the impact of Thomas's future retirement on the alimony award. Thomas argues:

> [T]his spousal support award would require [him] to continue paying $1,500 per month until he is 69, which is four years past when he expected to retire. This fact is particularly concerning in this case, where Tom is already 62 and, while he has a relatively high income, his income depends on his ability to perform painting and sandblasting work. While Tom is admittedly a very hard worker, the fact remains that he *will* have to retire, as he will no longer be physically able to keep working as he is. Tom testified that he expected to retire around 65, and he would respectfully submit that that is a reasonable assumption given the nature of his job.

In response, Christina points out Thomas did not present evidence "indicating when he planned to retire." Rather, he testified he "can" retire when he is sixty-five, but wasn't sure when he would. Christina testified Thomas was a "workaholic" and agreed he was not the "type of guy" who would "quit as soon as he hits age 66." Read as a whole, the record does not show an expected retirement date for Thomas.

Besides, our case law does not support Thomas's argument that the district court should have ended his alimony obligation at the point of his future retirement. Our supreme court explained that "future retirement will ordinarily be considered to raise too many speculative issues to be considered in the initial spousal support award." *Gust*, 858 N.W.2d at 416. Indeed, that is our case. *Gust* concluded the question of reducing the payor's spousal support when he retired "must be made

in a modification action when retirement is imminent or has actually occurred." *Id.* at 418. Christina testified that she was aware Thomas could "come into court and modify [the alimony award] if and when he stops working or has a reduction in his income."

At this juncture, we see no reason to modify the decree. The district court's spousal support ruling is reasonable based on the length of the marriage and the disparity in the parties' earning capacities. We decline to disturb the award.

## B.      Appellate Attorney Fees

Christina asks for $4000 in appellate attorney fees. An award of attorney fees is not a matter of right, but rests within our discretion. *In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994). We consider Christina's needs, Thomas's ability to pay, and Christina's obligation to defend the decree on appeal. *See id.*

Thomas objects to the attorney fee request. He argues that, as appellee, Christina's counsel "was only obligated to file one brief" and did not provide an itemization of the hours or rate.

After weighing the factors, we decline to award appellate attorney fees. Both parties have the financial ability to pay their own attorney fees.

We tax the costs of the appeal to Thomas.

**AFFIRMED.**